Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence MODIFIES in part and AFFIRMS in part the Opinion and Award of the deputy commissioner.
The Full Commission finds as fact and concludes as matters of law the following which were agreed upon by the parties in the Pre-Trial Agreement as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act and the employment relationship existed between the parties on July 3, 1992.
2. The defendant was a duly qualified self-insured, with Key Risk Management Services as the servicing agent.
3. The date of the alleged injury was July 3, 1992.
4. The plaintiff's average weekly wage was $265.30 which yields a weekly compensation rate of $176.88, based upon the Form 22.
5. The issues for determination are:
 a. Whether the plaintiff suffered any injury other than the TMJ injury as a result of the July 3, 1992 incident; and
 b. What compensation, if any, is plaintiff entitled as a result of the TMJ injury, or any other injury causally related to the July 3, 1992 incident.
6. The parties stipulated fifty-eight pages of medical reports into evidence at the hearing.
* * * * * * * *
Based upon the competent evidence of record herein the Full Commission modifies in part the findings of fact by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. On June 1, 1992, the plaintiff began working as a certified nursing assistant for the defendant-employer. Plaintiff's duties involved providing care for nursing home patients, including assistance in bathing, dressing, and feeding.
2. On July 3, 1992, the plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer when she was struck in the right lower jaw by an elderly female patient. Plaintiff sustained a whiplash type injury which caused pain in her neck and pain, swelling and bruising to her jaw. Plaintiff continued to work after the injury.
3. The plaintiff reported the injury to the defendant and on July 6, 1992, was referred to Dr. John Earl, a family physician. X-rays taken revealed loose jaw cartilage, for which Dr. Earl referred plaintiff to oral surgeon, Dr. Christopher Brown.
4. On July 7, 1992, Dr. Brown found plaintiff to have an acute closed lock of the right jaw. After long-term conservative treatment failed to resolve plaintiff's problems, Dr. Brown performed arthroscopic surgery on the right jaw joint on March 14, 1995. Dr. Brown found scarring in the joint and adhesions. The defendant approved this surgery.
5. The plaintiff has not been assigned any permanent partial impairment rating to her jaw as a result of the July 3, 1992 injury. However, she does have chewing and eating restrictions, some of which may be permanent. At the time of the hearing before the deputy commissioner plaintiff was still required to wear at night a clear acrylic splint which fits the upper teeth to keep pressure off the joint. Plaintiff also needed to wear this splint intermittently as needed during the day.
6. According to Dr. Brown, in addition to chewing and eating restrictions, plaintiff will have scarring related to the surgery, occasional headaches and tightness of the joints of the jaw, stress and anxiety symptoms could exacerbate the joint injury due to increased clenching and grinding at night. These conditions could remain for a lifetime.
7. The plaintiff has suffered no diminution of her wage earning capacity as a result of the work-related injury.
8. On March 1, 1994, plaintiff was referred to neurosurgeon Dr. Mark Marchese, for complaints of pain in her neck and upper extremities. All diagnostic studies were reported as normal and thereafter, the plaintiff was referred to Dr. Andrea Stutesman for pain management.
9. On June 6, 1994, the plaintiff began pain management care with Dr. Stutesman, who found plaintiff to have non-work-related fibromyalgia. Plaintiff was released from her care with no restrictions.
10. On October 31, 1994, the plaintiff was evaluated by Dr. Maher F. Habashi, a neurosurgeon who found the plaintiff to have a permanent partial impairment rating of eight percent to her cervical spine, which he causally related to the July 3, 1992 incident. Dr. Habashi diagnosed sprain of the cervical spine and gave plaintiff restrictions of no lifting over 50 pounds and to avoid excessive reaching above shoulder level with the right upper extremity.
10. The plaintiff continues to require follow-up medical treatment by Dr. Brown for her temporomandibular joint.
* * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer on July 3, 1992. N.C. Gen. Stat. § 97-2(6).
2. As a result of the compensable injury, the plaintiff sustained injuries to her right jaw and cervical spine. The plaintiff is entitled to twenty-four weeks of permanent partial disability compensation as a result of the eight percent rating to the cervical spine. N.C. Gen. Stat. § 97-31(23).
3. As a result of the permanent injury to her right jaw, which is an important organ, plaintiff is entitled to proper and equitable compensation under N.C. Gen. Stat. § 97-31(24) as no compensation is payable under any other subdivision of Section97-31 for said injury.
4. As a result of the compensable right jaw and cervical spine injuries, the plaintiff is entitled to have defendant provide medical compensation for expenses incurred. In addition, the plaintiff is entitled to have defendant provided ongoing medical compensation for the jaw injury. N.C. Gen. Stat. § 97-2(19).
* * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. Subject to a reasonable attorney's fee herein approved, the defendant shall pay permanent partial disability benefits for twenty-four weeks, at the rate of $176.88 per week for the eight percent permanent partial disability to plaintiff's spine. This has accrued and shall be paid in a lump sum.
2. Subject to a reasonable attorney's fee, defendant shall pay equitable compensation in the amount of $5,000.00 for the permanent injury to plaintiff's right jaw pursuant to N.C. Gen. Stat. § 97-31(24).
3. A reasonable attorney's fee of twenty-five percent of the compensation awarded herein shall be deducted from sums due plaintiff and paid directly to plaintiff's counsel.
4. Defendant shall pay medical expenses incurred or to be incurred as a result of the TMJ and neck injuries so long as these treatments effect a cure, provide relief, or lessen the period of disability.
5. The defendant shall pay the costs including the following expert witness fees of $300.00 to Dr. Habashi (amended), $350.00 to Dr. Brown (amended) and $140.00 to Dr. Earl.
This the 29th day of April, 1997.
 S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _____________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _____________________ J. RANDOLPH WARD COMMISSIONER
BSB:jmf